**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

MICHAEL WEARRY

VERSUS

SCOTT M. PERRILLOUX and
MARLON KEARNEY FOSTER

CIVIL ACTION

18-594-SDD-SDJ

**RULING**

Before the Court is the *Motion to Dismiss Pursuant to Rule 12(c)*[1] filed by Defendant, Marlon Kearney Foster ("Foster"). Plaintiff Michael Wearry ("Wearry") filed an *Opposition*,[2] to which Foster filed a *Reply*.[3] Foster's co-defendant, Scott M. Perrilloux ("Perrilloux"), also filed a *Reply* to Wearry's *Opposition*.[4] Additionally, Perrilloux has filed his own *Motion to Dismiss Pursuant to Rule 12(c)*,[5] adopting the arguments set forth in Foster's *Motion to Dismiss*. Wearry opposes Perrilloux's *Motion to Dismiss* as well.[6] For the reasons that follow, the Court finds that the *Motions*[7] shall be denied.

The question presented by Foster's *Motion* is whether a Livingston Parish Sheriff's Office Detective, acting in concert with a local prosecutor, is entitled to absolute immunity for allegedly pulling a 14-year-old boy out of school on at least six occasions to intimidate him into offering false testimony at a murder trial – false testimony concocted wholesale by that detective and prosecutor and carefully rehearsed, the child's compliance ensured

---

[1] Rec. Doc. No. 49.
[2] Rec. Doc. No. 66.
[3] Rec. Doc. No. 73.
[4] Rec. Doc. No. 71.
[5] Rec. Doc. No. 51. Perrilloux previously filed a *Motion to Dismiss* under FRCP 12(b)(6) and now brings a *Motion to Dismiss* under Rule 12(c), supported by a me-too memo that "re-asserts, re-alleges, and re-avers each and every argument set forth in Doc. 49-1 and pleads same herein by reference, as if copied in extenso."
[6] Rec. Doc. No. 67.
[7] Rec. Doc. Nos. 49 and 51.

Document Number: 60351                                                                        1

with scare tactics like taking him to view the murder victim's bloody car.[8] Such are the allegations in the *Complaint*, which, on this 12(c) motion, the Court is bound to accept as true.[9] This question, and these facts, are not an issue of first impression for this Court. In June 2019, this Court denied a *Motion to Dismiss* by Foster's co-Defendant Scott Perrilloux, who was (and is today) the District Attorney for the 21st Judicial District in Livingston Parish, finding that he was not entitled to absolute prosecutorial immunity.[10]

Foster argues that "absolute immunity is afforded to prosecutors and other state official [sic] acting as advocates for the state."[11] Foster seeks absolute prosecutorial immunity, as opposed to the qualified immunity which is most often advanced by law enforcement officers, because "Plaintiff has specifically plead the motive and reasoning for defendants' alleged fabrication of evidence and coercion of witness testimony, and that motive was purely prosecutorial in nature."[12] Foster maintains that "[t]hese actions were not taken, according the allegations in the *Complaint*, in any form of investigatory role. . ."[13] "Rather, according to plaintiff, the coercion of Jeffrey Ashton to provide false testimony was solely driven by a concern that evidence was insufficient to convict plaintiff of murder."[14] In other words, because the function was prosecutorial, Foster claims absolute prosecutorial immunity.

The Fifth Circuit has held that "the proper focus should not be the identity of the

---

[8] Rec. Doc. No. 1, pp. 4-6.
[9] *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004).
[10] A more thorough presentation of the factual and procedural history of this case can be found in this Court's previous *Ruling* at Rec. Doc. No. 44.
[11] Rec. Doc. 49-1, p. 3.
[12] *Id.* at p. 7.
[13] *Id.*
[14] *Id.*

party claiming the immunity, but rather his 'role in the context of the case.'"[15] The allegations against Foster are essentially identical to the allegations against Perrilloux. In fact, Foster himself states that he "took the exact same actions as Perrilloux."[16] Those actions centered around Defendants' alleged attempt to falsely implicate Plaintiff Michael Wearry for an unsolved murder. The allegations are as follows:

1) Perrilloux and Foster allegedly "made an intentional and deliberate decision to fabricate a narrative . . . in order to procure Wearry's conviction and death sentence";[17]

2) Identified Jeffery Ashton, a 14 year old child who was "subject to juvenile court proceedings at the time and was vulnerable to intimidation by authorities."[18] Foster "picked him up from school, [drove] him to Perrilloux's office, and then, without a parent present . . . intimidated him"[19] and "provided [him] with a completely fabricated story to adopt and repeat"[20] that implicated Wearry in the murder;

3) Foster and Perrilloux included Wearry on a list of people Ashton identified from a photo array, even though "Ashton told them he did not" recognize Wearry and, in fact, "had no personal knowledge connecting Wearry to Walber's death";[21]

4) Foster and Perrilloux "[C]oached Ashton in at least six separate meetings to perfect the falsified story";[22]

---

[15] *O'Neal v. Mississippi Bd. of Nursing*, 113 F.3d 62, 65 (5th Cir.1997) (quoting *Mays v. Sudderth,* 97 F.3d 107, 110 (5th Cir.1996)).
[16] Rec. Doc. No. 49-1, p. 17.
[17] Rec. Doc. No. 44, p. 3.
[18] *Id.*
[19] Rec. Doc. No. 44, p. 3.
[20] *Id.*
[21] *Id.*
[22] *Id.*

5) Persuaded Ashton that he had previously provided "details about the night of Walber's murder that Ashton had never actually provided";[23]

6) And, after the United States Supreme Court vacated Wearry's conviction, allegedly instructed Livingston Parish Sheriff's Deputy Ben Ballard to "coerce Ashton into perpetuating his false testimony,"[24] including "promis[ing] favors in exchange for favorable trial testimony"[25] at the new trial.

In his *Motion*, Foster acknowledges that this Court already denied extending absolute immunity to Perrilloux based on the above allegations.[26] Foster suggests that the Court's prior *Ruling* was wrongfully decided because "neither the parties nor the Court cited or discussed" the 2003 United States Court of Appeals for the Fifth Circuit case *Cousin v. Small*,[27] which, Foster argues, "is controlling precedent."[28] *Cousin* is Fifth Circuit precedent, but the Court disagrees that absence of citation to *Cousin* in its *Ruling* on Perrilloux's *Motion* renders it wrongly decided on the question of absolute immunity for Defendants. Indeed, the Fifth Circuit's recent opinion in *Singleton v Canizzaro*,[29] which examines the scope and contours of absolute prosecutorial immunity, suggests that this Court's prosecutorial immunity analysis is correct. After reviewing the parties' briefs and the relevant case law, this Court concludes that Foster is not entitled to absolute immunity, for the same reasons outlined in this Court's previous *Ruling* – reasons that are only strengthened by the Circuit's most recent decision *Singleton v Canizzaro*.[30]

---

[23] *Id.*
[24] Rec. Doc. No. 44, p. 4.
[25] *Id.*
[26] Rec. Doc. No. 49-1, p. 12.
[27] 325 F.3d 627 (5th Cir. 2003).
[28] Rec. Doc. No. 49-1, p. 12.
[29] *Singleton v. Cannizzaro*, 956 F.3d 773 (5th Cir. 2020).
[30] *Id.*

**I.    MOTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(C)**

The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion under Rule 12(b)(6).[31] "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[32] When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[33] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[34] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[35]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[36] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[37] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference

---

[31] *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004).
[32] *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008) (quoting *Hughes v. The Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir. 2001)).
[33] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[34] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[35] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[36] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).
[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

that the defendant is liable for the misconduct alleged."[38] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[39] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[40] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[41]

## II.   ABSOLUTE PROSECUTORIAL IMMUNITY

As it did in denying District Attorney Perrilloux's immunity motion, the Court begins with the precept that "a functional analysis of the role a prosecutor is fulfilling when the alleged misconduct occurs is the touchstone to determining the type of immunity available."[42] Absolute immunity, the court reasons, attaches only to "conduct . . . that is intimately associated with the judicial phase of the criminal process and for a prosecutor's acts in initiating a prosecution and in presenting the state's case."[43] Considering the allegations against Perrilloux, this Court questioned whether they fell within a prosecutor's "traditional role[] as [an] advocate for the state,"[44] writing, "[a]lthough the breadth of discretion granted to district attorneys under Louisiana law is vast, and federal courts in Louisiana have held that prosecutors can be entitled to absolute immunity even when they act 'maliciously, wantonly or negligently,' the scope of prosecutorial immunity is not infinite."[45]

---

[38] *Twombly*, 550 U.S. at 570.
[39] *Iqbal*, 556 U.S. at 678.
[40] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[41] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[42] *Knapper v. Connick*, 96-0434 (La. 10/15/96), 681 So. 2d 944, 950.
[43] *Id.* at 949.
[44] *Id.* at 950.
[45] Rec. Doc. No. 44, p. 14.

This Court has already addressed the question: Was Perrilloux's conduct advocatory, as he claims, or was it more in the nature of evidence-gathering investigatory conduct, for which only qualified immunity would apply?[46] In denying absolute prosecutorial immunity to District Attorney Perrilloux, this Court consulted Fifth Circuit jurisprudence, including *Loupe v. O'Bannon*,[47] and a handful of cases outside the Fifth Circuit, where courts probed the line between investigatory and advocatory conduct. In *Moore v. Valder*, for example, the D.C. Circuit held that "[i]ntimidating and coercing witnesses into changing their testimony is not advocatory. It is rather a misuse of *investigative* techniques."[48] This Court also took guidance from *Barbera v. Smith*,[49] where the Second Circuit held that "acquiring evidence which might be used in a prosecution"[50] – as opposed to the "organization, evaluation, and marshalling"[51] of such evidence – was activity of a "police nature" and was therefore not entitled to absolute immunity.

Relying on *Cousin*, Foster would have this Court apply a bright line test and find that, because the allegedly fabricated testimony coerced from a minor was secured after Wearry was charged and was eventually presented at trial, it was necessarily advocatory. However, in *Singleton v. Cannizzaro*, the Fifth Circuit quickly rejected this bright line application of the temporal test, explaining that "[t]he Supreme Court has never held that the timing of a prosecutor's actions controls whether the prosecutor has absolute immunity. Instead, the Court focuses on the *function* the prosecutor was performing."[52]

---

[46] Rec. Doc. No. 44, p. 21.
[47] *Loupe v. O'Bannon*, 824 F.3d 534, 536 (5th Cir. 2016), recently cited with approval in *Singleton v. Cannizzaro*, 956 F.3d 773, 782 (5th Cir. 2020).
[48] 65 F.3d 189, 194 (D.C. Cir. 1995)(emphasis in original).
[49] 836 F.2d 96 (2d Cir. 1987).
[50] *Id.* at 100.
[51] *Id.*
[52] *Singleton,* 956 F.3d at 783 (emphasis added).

Other Circuits similarly look to function and not just timing in determining the scope of absolute prosecutorial immunity. As noted by this Court in its prior *Ruling*[53] denying absolute prosecutorial immunity to Perrilloux, the Seventh Circuit in *Fields v. Wharrie* held that a prosecutor who fabricated trial evidence was not entitled to absolute immunity: "A prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial. That would create a 'license to lawless conduct.'"[54] The Court reiterates that "allowing Perrilloux to claim absolute immunity simply because his alleged actions can be characterized as 'preparation for trial' would create a license for prosecutors to use intimidation to fabricate evidence, knowing they would be shielded by immunity."[55] The same reasoning applies to Detective Foster, who worked in concert with Perrilloux to coerce a minor into providing false testimony.

Defendant Foster urges the Court to follow *Beckett v. Ford*,[56] a 2010 case where the Sixth Circuit granted absolute immunity to a prosecutor on allegations of fabrication of witness testimony very similar to the allegations herein. Apposite though it may be, *Beckett* is not binding authority, and this Court finds it unpersuasive insofar as it arrives at its conclusion by reasoning that, because the fabrication occurred in preparation for trial, it was advocatory; this is the bright line approach called into question by the Fifth Circuit in *Singleton v Cannizzarro*. Even the *Beckett* court acknowledged that "it is possible for a prosecutor who engages in a conspiracy to manufacture false evidence [to] not to be acting as an advocate for the state when he does so."[57] For reasons discussed

---

[53] Rec. Doc. No. 44.
[54] *Fields v. Wharrie*, 740 F.3d 1107, 1109 (7th Cir. 2014).
[55] Rec. Doc. No. 44, p. 16.
[56] *Beckett v. Ford*, 384 F. App'x 435 (6th Cir. 2010).
[57] *Id.* at 451.

in its previous *Ruling* and *infra*, this Court rejects the notion that the label "preparation for trial" is capable of bestowing immunity upon any and all prosecutorial conduct.

In short, Foster's *Motion,* and Perrilloux's re-urged *Motion,* will be denied for the same reasons previously given by this Court. Perrilloux's and Foster's alleged conduct was not advocatory in function. The Court's rationale, which carefully considered the difference between investigatory and advocatory conduct, has since been looked upon with favor by the Fifth Circuit in the *Singleton v. Cannizzaro* decision (see discussion, *infra*). Foster concedes that his conduct was the "exact same" as Perrilloux's but argues that the Court should reach a different result because of *Cousin v. Small*.[58] In *Cousin*, the Fifth Circuit drew a hard "temporal" line between investigatory and advocatory conduct, where advocatory conduct is anything that a prosecutor does after the identification of a suspect and the development of probable cause to arrest him. This "temporal" approach comes from the United States Supreme Court via *Imbler*[59] and *Buckley*[60] (discussed more thoroughly in this Court's previous *Ruling* at Record Document Number 44).

*Cousin* is factually analogous to the instant case. The prosecutor in *Cousin* was alleged to have "told [a witness] to implicate Cousin falsely in the murder and coached him on how to testify."[61] Applying the "temporal" test, the Fifth Circuit held that the prosecutor was "acting as an advocate rather than as an investigator. The interview [where the witness was coached to lie] was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified

---

[58] *Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003).
[59] *Imbler v. Pachtman*, 424 U.S. 409 (1976).
[60] *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).
[61] *Cousin*, 325 F.3d at 635.

suspect, not to identify a suspect or establish probable cause."[62] The court noted that the investigatory/advocatory question entirely "turns on whether Cousin had been identified as a suspect at the time [the witness] was interviewed and whether the interview related to testimony to be presented at trial."[63]

Applying *Cousin* strictly to the facts of the instant case arguably yields a different result than this Court reached in its previous *Ruling*. Perrilloux's and Foster's alleged conduct did occur *after* a suspect had been arrested – indeed, their coercion and fabrication of testimony from a minor is alleged to have been an effort to strengthen their case and ensure a successful prosecution of that suspect. But, even in *Cousin*, the Fifth Circuit cautioned against this formalistic "temporal" test, explaining that even though "*many, perhaps most*, such interviews are likely to be advocatory rather than investigative,"[64] the Supreme Court in *Buckley* "did not explicitly hold that all witness interviews conducted after indictment are advocatory in nature."

This Court rejects the simplistic view that once charges are filed, *all conduct* is advocatory and thus absolutely shielded. The statement that many, or even most, post-indictment witness interviews are advocatory in nature clearly allows for the possibility that some are not – in other words, for the possibility that some post-indictment witness interviews are investigatory. This is especially true in light of the Fifth Circuit's recent ruling in *Singleton v. Cannizzaro*, which places the otherwise strict temporal test within the context of a broader "functional approach."[65]

---

[62] *Id.*
[63] *Id.* at 633.
[64] *Id.* (emphasis added).
[65] *Singleton v. Cannizzaro*, 956 F.3d 773, 780 (5th Cir. 2020).

### III.   *SINGLETON V. CANNIZZARO*

In *Singleton*, the Fifth Circuit denied absolute immunity to the Orleans Parish District Attorney and several assistant district attorneys for allegedly using "fake 'subpoenas' to pressure crime victims and witnesses to meet with them."[66] The facts of *Singleton* are not directly analogous to the facts of this case, but the Fifth Circuit's rationale and application of the absolute prosecutorial immunity doctrine bears directly upon it.

The prosecutor defendants in *Singleton* argued "that creating and issuing the fake subpoenas was protected prosecutorial conduct because it 'relate[d] to the core prosecutorial function of preparing evidence and testimony for trial.'"[67] Moreover, the defendants asserted that, because their actions took place after charges had already issued against suspects in the underlying criminal cases, the temporal test dictates that those actions were advocatory. The Fifth Circuit quickly rejected this bright line application of the temporal test, explaining that "[t]he Supreme Court has never held that the timing of a prosecutor's actions controls whether the prosecutor has absolute immunity. Instead, the Court focuses on the *function* the prosecutor was performing."[68]

That being said, the *Singleton* court did distinguish *Cousin* in a footnote, pointing out that the facts of *Singleton* "are not governed by *Cousin*" because "there the actions occurred *during* a pending trial and were designed to shape a witness's testimony at that trial. Here, by contrast, [the defendants'] alleged use of the fake subpoenas on Plaintiffs occurred earlier in the process."[69] The fake subpoenas in question were used to elicit

---

[66] *Id.* at 777.
[67] *Id.* at 782.
[68] *Id.* at 783 (emphasis added).
[69] *Id.* at 782, n. 5 (emphasis added).

information "while related criminal cases were pending."[70] Foster's and Perrilloux's alleged actions, like those of the Canizzarro defendants, occurred after the arrest of a suspect and in the months leading up to trial. The *Singleton* court characterized the conduct in *Cousin* as occurring "*during* a pending trial."[71] This Court does not find these categories – "while related criminal cases were pending" versus "during a pending trial" – to be especially clear, nor is it obvious to the Court where the conduct in this case, occurring as it did several months before trial, belongs on that continuum. This underscores the difficulty in applying a purely temporal test.

The Fifth Circuit's discussion in *Singleton* of the outer limits of what reasonably constitutes the "prosecutorial function" provides meaningful support to the analysis in this Court's previous *Ruling* and is equally applicable to the instant *Motion*. The *Singleton* court's reasoning as to why the prosecutors' alleged conduct was arguably not advocatory even though it occurred post-indictment and was, in a technical sense, part of the prosecutor's preparation for trial, applies with equal force to Perrilloux's and Foster's alleged conduct in this case.

First, the Fifth Circuit explains, the *Singleton* defendants' alleged conduct was less "intimately associated with the judicial phase of the criminal process"[72] and more investigatory because:

> Defendants allegedly used the [fake] subpoenas to gather information from crime victims and witnesses *outside of court*. Investigation has historically and by precedent been regarded as the work of police, not prosecutors, and it does not become a prosecutorial function merely because a prosecutor has chosen to participate. Defendants' information-gathering is more analogous to investigative police work than advocatory conduct.[73]

---

[70] *Id.*
[71] *Id.* at 782, n. 5 (emphasis added).
[72] *Id.* at 782.
[73] *Id.* at 782–83 (5th Cir. 2020)(emphasis added)(some internal citations and quotations omitted).

The physical context of the prosecutorial misconduct -- outside of court -- is treated as relevant by the Fifth Circuit, as it was by this Court in its previous *Ruling*:

> Here, Wearry alleges, Perrilloux "picked [Ashton] up from school, drove him to Perrilloux's office, and then, without a parent present . . . intimidated him into falsely implicating Wearry in the Walber murder." These alleged actions occurred not, as in *Imbler*, during a courtroom recess at trial, which would place them much more squarely in the prosecutorial sphere. Instead, Perrilloux's alleged actions began when he went to Ashton's school in December 2001, three months before Wearry's March 2002 trial. . .[74]

Moreover, the Fifth Circuit's observation that information-gathering is more investigatory than advocatory bolsters this Court's reasoning in its denial of absolute immunity as to Perrilloux and Foster. This Court previously distinguished between a prosecutor's "effort to control the presentation of [a] witness' testimony"[75] (which the *Imbler* Court held to be prosecutorial in nature and entitled to absolute immunity) and the wholesale fabrication of testimony. The mental gymnastics required to conclude that inventing fake testimony and coercing a minor to recite it at trial is simply "an effort to control the presentation of testimony" are difficult to fathom. Securing a witness statement has traditionally been considered an investigatory police function; securing false witness testimony by inventing it and coercing its delivery is not conduct advocatory in nature.

The Fifth Circuit in *Singleton* instructs that prosecutorial conduct is less "intimately associated with the judicial phase of the criminal process"[76] when it involves "side-stepping," or acting outside of, the judicial process. Creating a false narrative and then intimidating a minor into parroting that narrative is no less "side-stepping" than issuing fake subpoenas. The duty to advocate "is limited to legitimate, lawful conduct compatible

---

[74] Rec. Doc. No. 44, pp. 20-21.
[75] *Singleton*, 956 F.3d at 783.
[76] *Id.* at 782.

with the very nature of a trial as a search for truth."[77] It is notable that that neither Perrilloux nor Foster argues that he is entitled to qualified immunity – perhaps because it would strain credibility to argue that the willful fabrication of evidence could be objectively reasonable.

The *Singleton* court also quoted the Fifth Circuit's decision in *Loupe v. O'Bannon*, noting that a prosecutor who orders a warrantless arrest

> steps outside of his role as an advocate of the state before a neutral and detached judicial body and takes upon himself the responsibility of determining whether probable cause exists, much as police routinely do. Nothing in the procuring of immediate, warrantless arrests is so *essential to the judicial process* that a prosecutor must be granted absolute immunity.[78]

Likewise, nothing in the willful fabrication of witness testimony is so essential to the judicial process that a prosecutor or law enforcement officer should be granted absolute immunity when he engages in it. The judicial process is a search for truth. Coercion of untruthful testimony is not essential to the judicial process; it is the antithesis of the judicial process. If the underlying prosecution fails without the fabricated testimony, so be it. Surely the system values honest prosecutions more than obtaining a guilty verdict at any cost. This Court perceives a common thread between the fake subpoenas and the alleged conduct herein. In *Singleton,* the prosecutors used fake subpoenas to coerce and intimidate witnesses to do what they wanted -- appear for interviews. This scheme worked because the defendants harnessed the authority of the courts and the justice system to create a dynamic where the recipient of the fake subpoena felt pressured to submit.  Similarly, the

---

[77] *Nix v. Whiteside*, 475 U.S. 157, 166 (1986); *Id.* at 171 ("under no circumstance may a lawyer either advocate or passively tolerate a client's giving false testimony. This, of course, is consistent with the governance of trial conduct in what we have long called 'a search for truth'").

[78] 824 F.3d 534, 540 (5th Cir. 2016) (emphasis added); *Singleton v. Cannizzaro*, 956 F.3d 773, 782 (5th Cir. 2020).

approach allegedly used by Foster and Perrilloux relied upon flexing the muscle and power of their respective offices to intimidate a fourteen-year-old child into doing what they wanted. In both cases, the imprimatur of the courts and the judicial system was abused in order to distort the information-gathering process. The Fifth Circuit in *Singleton* clearly states that such an "attempt to obtain information from crime victims and witnesses outside the judicial context falls into the category of investigative conduct for which prosecutors are not immune."[79]

*Singleton* announces a preference for functional over temporal analysis and appears to allow a wider berth for normative policy considerations when assessing what falls within the prosecutor's "traditional" role. Viewed in light of *Singleton*, the Court finds that Foster's *Motion to Dismiss* on the grounds of absolute immunity shall be DENIED. Perrilloux's *Motion* adopting Foster's arguments is likewise DENIED.

## IV. CONCLUSION

For the reasons set forth above, Foster's *Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(c)*[80] and Perrilloux's *Motion to Dismiss for Failure to State a Claim*[81] are both DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 24, 2020.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[79] *Id.* at 783–84 (citing *Hoog-Watson v. Guadalupe Cty., Tex.,* 591 F.3d 431, 438 (5th Cir. 2009)).
[80] Rec. Doc. No. 49.
[81] Rec. Doc. No. 51.