UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL WEARRY

VERSUS

SCOTT M. PERRILLOUX and
MARLON KEARNEY FOSTER

CIVIL ACTION

18-594-SDD-RLB

RULING

Before the Court is a *Rule 59(e) Motion to Alter or Amend Judgment and Reconsider Summary Judgment Ruling* filed by Plaintiff Michael Wearry ("Plaintiff" or "Wearry").[1] Defendants Paulette H. Foster, Kearney Matthew Foster, William Aaron Foster, and Annette Foster Alford, as the Personal Representatives of Marlon Kearney Foster ("Foster"), (collectively, "Defendants") oppose the motion.[2] Plaintiff has filed a reply.[3] The Court has considered the law, arguments, and submissions of the parties and is prepared to rule. For the following reasons, Plaintiff's motion is denied.

I. BACKGROUND

This case arises out of the 1998 murder of Albany High School student Eric Walber ("Walber"). A Livingston Parish, Louisiana jury convicted Wearry of murdering Walber in the first degree and sentenced him to death in 2002.[4] Wearry appealed his conviction to the Louisiana Supreme Court, which found no merit in any of the 38 assignments of error presented and affirmed Wearry's conviction and sentence.[5] Later, Wearry's defense

---

[1] Rec. Doc. 176.
[2] Rec. Doc. 179.
[3] Rec. Doc. 182.
[4] *See State v. Weary* [sic], 2003-3067 (La. 4/24/06), 931 So. 2d 297.
[5] *Id.*

Page **1** of **11**

counsel became aware of certain "belatedly revealed information [that] would have undermined the prosecution and materially aided Wearry's defense at trial."[6]

In 2016, after Wearry's attempts to obtain postconviction relief at the state level were unsuccessful, the United States Supreme Court granted the petition for writ of certiorari that Wearry filed from Death Row at the Louisiana State Penitentiary.[7] Calling the state's evidence against Wearry a "house of cards"[8] and finding that "the prosecution's failure to disclose material evidence violated Wearry's due process rights,"[9] the Supreme Court vacated Wearry's conviction and remanded the case for a new trial.

On May 30, 2018, pending a new trial, Wearry filed this lawsuit against Scott M. Perrilloux ("Perrilloux"), the District Attorney in the 21st Judicial District of Louisiana for Livingston Parish where Wearry was convicted, and Foster, a former Livingston Parish Sheriff's Office detective.[10] On December 26, 2018, pending the new trial on the criminal charges against him, Wearry pled guilty to the charge of manslaughter of Walber.[11]

Wearry asserts the following claims: (1) a 42 U.S.C. § 1983 claim for fabrication of evidence during an investigation in violation of the Fourteenth Amendment's Due Process Clause against Perrilloux, in his official and individual capacities, and Foster, in his individual capacity;[12] (2) a 42 U.S.C. § 1983 claim for intentional use of perjured testimony in violation of the Fourteenth Amendment's Due Process Clause against Perrilloux only, in his official capacity;[13] and (3) a supplemental state law claim for

---

[6] *Wearry v. Cain*, 136 S. Ct. 1002, 1004 (2016).
[7] *Id.* at 1006.
[8] *Id*. at 1006.
[9] *Id*. at 1002.
[10] Rec. Doc. 1, ¶¶ 2–3.
[11] Rec. Doc. 139-3.
[12] Rec. Doc. 1; *Id.* at ¶¶ 66–82.
[13] *Id.* at ¶¶ 83–96.

malicious prosecution in violation of La. Civ. Code art. 2315 against Perrilloux, in his official and individual capacities, and Foster, in his individual capacity.[14] All claims against Perrilloux were voluntarily dismissed on January 8, 2025.[15] The Court granted summary judgment as to the remaining Defendants on July 15, 2025.[16] The Court found that under the Supreme Court's decision in *McDonough v. Smith*, Plaintiff's due process fabrication of evidence claim did not accrue until there was a favorable termination of his prosecution, and that the Supreme Court's vacate, and that the remand order was not a favorable *termination* within the meaning of *Heck v. Humphrey*, thus the criminal charges against the Plaintiff were pending re-trial when he filed this suit.[17] In other words the criminal case was ongoing and the *Heck* bar applied.

Plaintiff now moves the Court to reconsider its Summary Judgment Ruling.[18] He argues that the Court committed manifest errors of law and fact by relying on *McDonough* because (1) his fabrication of evidence claim is based in substantive due process; and (2) he never analogized his claim to the state law tort of malicious prosecution.[19] Plaintiff likewise argues that the Court erred in finding that his manslaughter plea was "likely not" a favorable termination of his prosecution.[20] In opposition, Defendants argue that the Court properly applied *McDonough* and correctly concluded that Plaintiff did not meet *Heck*'s favorable termination requirement.

---

[14] *Id.* at ¶¶ 97–104.
[15] Rec. Doc. 168.
[16] Rec. Doc. 173.
[17] *Id.* at pp. 7–8.
[18] Rec. Doc. 176.
[19] Rec. Doc. 176-1, pp. 3–9.
[20] *Id.* at 9.

## II.   LEGAL STANDARD

To prevail on a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), the moving party must show: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) a manifest error of law or fact.[21] A Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[22] When considering a motion to alter or amend a judgment, "[t]he court must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts."[23] A Rule 59(e) motion to alter a judgment "is an extraordinary remedy" that should be granted "sparingly."[24]

## III.   LAW AND ANALYSIS

### A. Fabrication of Evidence Post-*McDonough*

As the Court noted in its Summary Judgment Ruling:

> In *McDonough v. Smith*, the United States Supreme Court found that "malicious prosecution is the most analogous common-law tort" to fabrication of evidence. As such, a fabrication of evidence claim "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor." The Court went on to hold that the plaintiff in that case "could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution." In support of its holding, the Court drew heavily from its prior decision in *Heck v. Humphrey*[.][25]

Plaintiff assigns error, arguing that the Court did not directly address his argument that his fabrication of evidence claim is based in substantive due process rather than

---

[21] *See Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 597 (5th Cir. 2017) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).
[22] *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004)
[23] *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).
[24] *Matthews v. Tidewater, Inc.*, 108 F.4th 361, 371 (5th Cir. 2024) (citing *Templet*, 367 F.3d at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).
[25] Rec. Doc. 173, p. 6 (quoting *McDonough*, 588 U.S. at 116–17).

procedural due process.[26] He argues that the constitutional right at issue in *McDonough* was "the Due Process Clause 'right not to be deprived of liberty as a result of the fabrication of evidence by a law enforcement officer'" and that the *McDonough* plaintiff analogized his fabrication of evidence claim to the common-law tort of malicious prosecution.[27] The Plaintiff maintains that *McDonough* applies only to fabrication of evidence claims based in procedural due process, not substantive due process like Plaintiff's.[28]

In support of Plaintiff's argument, he points the Court to *McDonough*'s footnote 2, which states:

> In accepting the Court of Appeals' treatment of McDonough's claim as one sounding in denial of due process, we express no view as to what other constitutional provisions (if any) might provide safeguards against the creation or use of fabricated evidence enforceable through a 42 U.S.C. § 1983 action. See *Soldal v. Cook County*, 506 U.S. 56, 70, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands"). Moreover, because the Second Circuit understood McDonough's due process claim to allege a deprivation of liberty, we have no occasion to consider the proper handling of a fabricated-evidence claim founded on an allegation that the use of fabricated evidence was so egregious as to shock the conscience, see, *e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), or caused harms exclusively to "interests other than the interest in freedom from physical restraint," *Albright v. Oliver*, 510 U.S. 266, 283, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Kennedy, J., concurring in judgment); see also, *e.g.*, W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, p. 870 (5th ed. 1984) (Prosser & Keeton) ("[O]ne who is wrongfully prosecuted may suffer both in reputation and by confinement"). Accordingly, we do not address what the accrual rule would be for a claim rooted in other types of harm independent of a liberty deprivation, as no such claim is before us. See 898 F.3d 259, 266 (CA2 2018).[29]

---

[26] Rec. Doc. 176-1, pp. 6–9.
[27] *Id.* at p. 3 (quoting *McDonough*, 588 U.S. at 115).
[28] *Id.* at pp. 6–7.
[29] *McDonough*, 588 U.S. at 115, n.2.

Plaintiff argues that he brought a substantive due process fabrication of evidence claim. However, his Complaint only generally alleges a "Fourteenth Amendment Due Process Violation" with respect to Perrilloux and Foster "intentionally and deliberately coerc[ing] and intimidate[ing] Ashton, a minor, into fabricating false evidence implicating Wearry in the Walber murder."[30] Plaintiff alleged that "Perrilloux's and Foster's conduct in manufacturing and perpetuating Ashton's false witness account violated [his] due process rights[,]"[31] which caused him to suffer "significant damages, including but not limited to his wrongful conviction and death sentence, and his incarceration on death row for almost 15 years."[32]

The "accrual analysis begins with identifying 'the specific constitutional right alleged' to have been infringed."[33] Plaintiff suggests that identifying the constitutional right infringed as substantive due process yields a different result than if the identified constitutional right is procedural due process. The Court disagrees. Like in *McDonough*, Plaintiff's allegations herein "seek[] to vindicate a right not to be deprived of liberty as a result of the alleged fabrication of evidence by a government officer."[34] Plaintiff disputes that his fabrication of evidence claim is analogous to the common-law tort of malicious prosecution for purposes of determining accrual. But tellingly, he pled a supplemental state law claim for malicious prosecution, wherein he re-alleged and incorporated by reference all allegations previously pled, including those related to his fabrication of evidence claim.[35] The Court sees no substantial difference between Plaintiff's claims here

---

[30] Rec. Doc. 1, p. 10.
[31] Id. at ¶ 73.
[32] Id. at ¶ 80.
[33] McDonough at 115, citing *Manuel v. Joliet*, 137 S.Ct.911, 912 (1994) (plurality)
[34] *Id.*
[35] Rec. Doc. 1, ¶ 97.

and those asserted in *McDonough*.

Even analyzing the constitutional right infringed as a substantive due process fabrication of evidence claim, *McDonough* still applies. Following *McDonough*, the Fifth Circuit, sitting *en banc* in *Wilson v. Midland County, Texas*, thoroughly discussed *Heck*'s favorable termination requirement.[36] It explained that the Supreme Court's decision in *Edwards v. Balisok*—decided three years after *Heck*—"made clear *all* § 1983 suits challenging tainted convictions and sentences must run *Heck*'s favorable-termination gauntlet—regardless of whether the alleged taint is procedural or substantive."[37] The Fifth Circuit then explained how "[t]he Supreme Court recently reaffirmed this interpretation of *Heck*'s favorable-termination element" in *McDonough*.[38] The court interpreted *McDonough* to "echo[] *Heck*'s and *Edwards*'s teaching that plaintiff must prove favorable termination whenever they challenge a tainted conviction or sentence, regardless of the specific underlying constitutional claim."[39]

Though *Wilson* did not involve a fabrication of evidence claim, its analysis of *Heck*, *Edwards*, and *McDonough* is instructive and lays the foundation for analyzing constitutional violation claims that emanate from allegations of fabrication of evidence in criminal cases. The Eastern District of Louisiana's recent decision in *Cerdes v. United States* is on point.[40] There, the plaintiff alleged specifically alleged both procedural due process and substantive due process fabrication of evidence claims.[41] With respect to substantive due process, the plaintiff specifically alleged a "Fourteenth Amendment

---

[36] *Wilson v. Midland Cnty., Tex.*, 116 F.4th 384, 393–96 (5th Cir. 2024).
[37] *Id.* at 394 (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)).
[38] *Id.* at 395.
[39] *Id.*
[40] *Cerdes v. United States*, No. 24-2866, 2025 WL 2444137 (E.D. La. Aug. 25, 2025).
[41] *Id.* at *8.

substantive due process claim based on actions that shock the conscience."[42] The court found that the plaintiff's procedural due process claim fell squarely within the contours of *McDonough*.[43] As to substantive due process, the court found that *McDonough* did not specifically address substantive due process claims based on actions that shock the conscience[44], but that those claims must too meet *Heck*'s favorable termination requirement.[45]

In its analysis, the *Cerdes* court explained that to prove a substantive due process fabrication of evidence claim a plaintiff must prove the following: "(1) that the officers fabricated evidence (2) for the purpose of falsely obtaining a charge and (3) that the

---

[42] *Id.*
[43] *Id.*
[44] *County. of Sacramento v. Lewis*, 118 S.Ct. 1708, 1716–17, 523 U.S. 833, 845–46 (1998) provides a thorough analysis and historical review of Due Process.

> The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974), procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective, see, *e.g., Daniels v. Williams,* 474 U.S., at 331, 106 S.Ct., at 664 (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). While due process protection in the substantive sense limits what the government may do in both its legislative, see, *e.g., Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and its executive capacities, see, *e.g., Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.

> Our cases dealing with abusive executive action have repeatedly emphasized that only the most egregious official conduct can be said to be "arbitrary in the constitutional sense," *Collins v. Harker Heights,* 503 U.S., at 129, 112 S.Ct., at 1071, thereby recognizing the point made in different circumstances by Chief Justice Marshall, " 'that it is *a constitution* we are expounding,' " *Daniels v. Williams, supra,* at 332, 106 S.Ct., at 665 (quoting *M'Culloch v. Maryland,* 17 U.S. 316, 4 Wheat. 316, 407, 4 L.Ed. 579 (1819) (emphasis in original)). Thus, in *Collins v. Harker Heights,* for example, we said that the Due Process Clause was intended to prevent government officials " ' "from abusing [their] power, or employing it as an instrument of oppression." ' " 503 U.S., at 126, 112 S.Ct., at 1069 (quoting *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S., at 196, 109 S.Ct., at 1003 (in turn **1717** quoting *Davidson v. Cannon,* 474 U.S., at 348, 106 S.Ct., at 670–671).

> To this end, for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience.

[45] *Id.* at *8–*10.

evidence influenced the decision to charge" and that "the defendants intentionally or knowingly presented false evidence or fabricated evidence, [such that] their actions shock the conscience.'"[46]

The *Cerdes* court found that if the plaintiff's "criminal conviction was still standing, the validity of his conviction would be undermined if he secured a civil judgment in his favor on [the] substantive due process claim."[47] Moreover:

> Cerdes's claim that Martin fabricated evidence in a way that shocks the conscience is not materially dissimilar to his other constitutional injury theories to which *Heck* applies. Cerdes must still prove that Martin fabricated evidence to prove his procedural due process claim, and the Supreme Court has determined that those fabricated evidence claims are most analogous to the common law tort of malicious prosecution, which has a favorable-termination element. *McDonough*, 588 U.S. 118-20. It is true that "some claims do fall outside of *Heck*'s ambit when a conviction is merely 'anticipated.' "[12] *McDonough*, 588 U.S. at 119 (quoting and discussing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)). But "[t]here is not a 'complete and present cause of action' to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." *Id.* (quoting *Wallace*, 549 U.S. at 388). The Court sees no reason to apply different reasoning here just because Cerdes has an additional burden to prove that Martin's conduct shocks the conscience.[48]

Considering the foregoing, the Court finds no error in its application of *McDonough* to Plaintiff's fabrication of evidence claim, be it procedural or substantive due process.. Plaintiff's motion is therefore denied as to this issue.

### B. Favorable Termination

Plaintiff alternatively argues that, even if the Court correctly applied *McDonough*, the Court erred in finding that his guilty plea to a manslaughter charge was "likely not" a

---

[46] *Id.* (alteration in original) (quoting *Rogers v. Lee Cnty., Miss.*, 684 F. App'x 380, 390 (5th Cir. 2017) (internal references omitted) (emphasis added)).
[47] *Id.* at *9.
[48] *Id.*

favorable termination of his prosecution.[49] Plaintiff misconstrues the Court's Ruling. As the Court explained, Plaintiff's "fabrication of evidence claim hinges on whether there was a 'favorable termination of his prosecution' prior to the filing of the instant suit."[50] The Court found that the Supreme Court vacating Plaintiff's conviction and remanding his case for a new trial was not a favorable termination within the meaning of *Heck*.[51] Therefore, there needed to be some other event that constituted a favorable termination prior to Plaintiff filing suit.[52] Accrual commence "when the plaintiff has 'a complete and present cause of action'."[53] If the plaintiff is ultimately convicted. . . and a civil suit would impugn that conviction, *Heck* will require dismissal."[54] The Supreme Court in plainly instructs[55]:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence *has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

The Court the finds no error in its favorable termination analysis. The Plaintiff stands convicted of manslaughter. His manslaughter conviction has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's

---

[49] Rec. Doc. 176-1.
[50] Rec. Doc. 173, p. 7.
[51] *Id.*
[52] *Id.* at 7-8.
[53] *Wallace v. Kato*, 549 U.S. 384, 388 (2007)
[54] *Id,* citing *Edwards v. Balisok,* 520 **U.S**. 641, 649, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Heck,* 512 **U.S**. at 487.
[55] *Heck,* 512 U.S. at 487 (emphasis added)

issuance of a writ of habeas corpus".[56] The Court finds that his fabrication of evidence claim would call into question the manslaughter conviction and is therefore barred by Heck. Plaintiff's motion is therefore denied as to this issue.

## IV. CONCLUSION

For the foregoing reasons, the *Rule 59(e) Motion to Alter or Amend Judgment and Reconsider Summary Judgment Ruling*[57] filed by Plaintiff Michael Wearry is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>February 26, 2026</u>.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[56] *Id.*
[57] Rec. Doc. 176.